**Nos. 26-1962, 26-1963 (Consolidated)**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re JAMES LAWRENCE PEARSON,
Debtor.

ROBERT NICHOLS and CORA NICHOLS,
*Appellants,*

v.

JAMES LAWRENCE PEARSON,
*Appellee.*

On Appeal from the Judgment of the
Bankruptcy Appellate Panel of the Ninth Circuit
BAP Nos. CC-25-1086, CC-25-1087 (Cross-Appeals)
Appeal from the United States Bankruptcy Court
for the Central District of California, Santa Ana Division
Adversary No. 8:23-ap-01011-SC (Hon. Scott C. Clarkson)
Bankruptcy Case No. 8:22-bk-11862-SC

**APPELLEE'S ANSWERING BRIEF**

Jenny L. Doling (SBN 207033)
J. DOLING LAW, PC
36-915 Cook Street, Suite 101
Palm Desert, CA 92211
Tel: (760) 884-4444
Fax: (760) 341-3022
JD@JDL.LAW

Counsel for Appellee
James Lawrence Pearson

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................1

II. STATEMENT OF JURISDICTION.....................................................4

III. STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW..............5

    A. Appellants Do Not Pair Their Issues With a Standard of Review, and the Standard They Assert Is Not the One That Governs .......................................5

    B. Issue One and the Applicable Standard of Review ......................6

    C. Issue Two and the Applicable Standard of Review.......................6

    D. Issue Three and the Applicable Standard of Review .....................6

    E. Issue Four and the Applicable Standard of Review .....................7

IV. STATEMENT OF THE CASE .............................................................8

    A. The Loan and Dr. Pearson's Course of Study.............................9

    B. The Bankruptcy Court's Findings ............................................10

    C. The Panel's Decision ................................................................13

V. SUMMARY OF ARGUMENT ...........................................................15

VI. ARGUMENT.......................................................................................19

    A. The Loan Was Not Incurred "Solely to Pay Qualified Higher Education Expenses," and Appellants Have Not Shown Clear Error in the Findings That Compel That Conclusion....................................................19

        1. The bankruptcy court found that the loan was incurred to pay Pre-Medical Education expenses in addition to Medical Education expenses, and that Appellants failed to carry their burden as to the Pre-Medical year ................................................................19

        2. Appellants did not contest those findings before the Panel and cannot contest them now ..................................................22

        3. On the merits, Appellants have not shown clear error...................24

        4. Given those findings, "solely" is not satisfied, and the plain text controls ...............................................................................28

        5. The "purpose" test does not rescue the appeal, because the bankruptcy court applied it and found a mixed purpose....................31

i

6. The Panel's independent cost-of-attendance holding is an alternative ground for affirmance that Appellants barely address ......33

7. The "series of loans" theory contradicts Appellants' own stipulation and was never presented below .........................................34

B. In the Alternative, the Northumbria Year Meant Dr. Pearson Was Not an Eligible Student at an Eligible Educational Institution ................................35

C. Congress's Unambiguous Language and the Policies Underlying § 523(a)(8)(B) Support Affirmance................................................................45

VII. CONCLUSION ........................................................................................47

CERTIFICATE OF COMPLIANCE....................................................................48

STATEMENT OF RELATED CASES.................................................................49

CERTIFICATE OF SERVICE ...........................................................................50

# TABLE OF AUTHORITIES

## Cases

Anderson v. City of Bessemer City, 470 U.S. 564 (1985) ........................4, 7, 24, 27

Bendetti v. Gunness (In re Gunness), 505 B.R. 1 (9th Cir. BAP 2014) ..................29

Bullock v. BankChampaign, N.A., 569 U.S. 267 (2013) .........................................29

Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik), 635 F.3d 261 (7th Cir. 2011)..................................................................................................31

Conti v. Arrowood Indem. Co. (In re Conti), 982 F.3d 445 (6th Cir. 2020).....31, 32

Golden v. Nat'l Collegiate Student Loan Tr. 2006-4 (In re Golden), 671 B.R. 544 (Bankr. E.D.N.Y. 2025).....................................................14, 33

Grogan v. Garner, 498 U.S. 279 (1991)................................................................19

Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000).....................................................................................29

Hibbs v. Winn, 542 U.S. 88 (2004) .......................................................................29

Homaidan v. Sallie Mae, Inc. (In re Homaidan), 646 B.R. 550 (Bankr. E.D.N.Y. 2022) ...............................................................13, 14, 30, 33

In re Christoff, 527 B.R. 624 (9th Cir. BAP 2015) ................................................29

In re Decena, 549 B.R. 11 (Bankr. E.D.N.Y. 2016) ...............................................43

In re Dufrane, 566 B.R. 28 (Bankr. C.D. Cal. 2017)..............................................19

In re Rumer, 469 B.R. 553 (Bankr. M.D. Pa. 2012)...............................................43

Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar), 567 B.R. 160 (9th Cir. BAP 2017) .......................................................8, 19, 36

Kawaauhau v. Geiger, 523 U.S. 57 (1998)............................................................29

Lamie v. United States Tr., 540 U.S. 526 (2004) ..............................................16, 29

Mazloom v. Navient Sols., LLC (In re Mazloom), 648 B.R. 1 (Bankr. N.D.N.Y. 2023)................................................................................31, 36

Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869 (9th Cir. 2012)..........................7, 8

Quintanilla v. Nelnet Servicing LLC (In re Quintanilla), 2020 WL 7333590 (Bankr. M.D. Fla. Nov. 20, 2020) ...............................................31

Roth v. Educ. Credit Mgmt. Corp. (In re Roth), 490 B.R. 908 (9th Cir. BAP 2013) .....................................................................................19

Smith v. Marsh, 194 F.3d 1045 (9th Cir. 1999)..............................13, 16, 22, 23, 35

iii

United States v. Ron Pair Enters., Inc., 489 U.S. 235 (1989)..................................29

Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039 (11th Cir. 2015) ..........................39

Youssef v. Sallie Mae, Inc. (In re Homaidan), 650 B.R. 372
(Bankr. E.D.N.Y. 2022) ................................................................................34

## Statutes

11 U.S.C. § 523(a)(8)(B) ....................................................................passim

20 U.S.C. § 1002(a)(2)..................................................................................42

20 U.S.C. § 1088........................................................................18, 37, 38

20 U.S.C. § 1091....................................................................18, 37, 38, 44

20 U.S.C. § 1094....................................................................18, 38, 39

20 U.S.C. § 1221e-3......................................................................................42

20 U.S.C. § 3474..........................................................................................42

26 U.S.C. § 25A(b)(3)............................................................17, 18, 37

26 U.S.C. § 25A(f)(2) ....................................................................17, 37

26 U.S.C. § 221(d)(1).................................................................passim

26 U.S.C. § 221(d)(2)....................................................................17, 19

28 U.S.C. § 158(d) ..........................................................................................4

44 U.S.C. § 1510..........................................................................................42

## Regulations

26 C.F.R. § 1.221-1(e)(4)........................................................14, 17, 30, 46

34 C.F.R. §§ 600.51–600.58 ........................................................................42

34 C.F.R. § 600.54 ........................................................................................42

34 C.F.R. § 600.55(h)(2)........................................................7, 18, 40, 42, 43

34 C.F.R. § 668.14(a)(1) ..............................................................................39

75 Fed. Reg. 67170, 67196 (Nov. 1, 2010) ................................................42

## Rules

Fed. R. Civ. P. 52(a)(6)........................................................5, 7, 13, 22, 27

Fed. R. Bankr. P. 7052........................................................................5, 7, 13

Fed. R. App. P. 28(b) ..............................................................................4, 8

Fed. R. App. P. 32(a)(7)(B) ........................................................................48

9th Cir. R. 28-2.5 ..........................................................................................5

9th Cir. R. 28-2.6 ......................................................................................489

## I.     INTRODUCTION

Appellants Robert and Cora Nichols (the Nichols) can only win this appeal and reverse the Bankruptcy Appellate Panel's (BAP's) decision, if they convince this court that the factual findings of the bankruptcy court, that the entirety of the Nichols' loan to Appellee James Lawrence Pearson (debtor or Dr. Pearson) was discharged in Dr. Pearson's bankruptcy, were clearly erroneous. Pearson submits this is a very high bar in any case but an insurmountable one here. The Nichols never contested those findings before the BAP, which held itself bound by them, and because the findings are amply supported by the trial record. [1]

The BAP ruled that because the Nichols' loan was not incurred solely to pay qualified higher education expenses the entire loan was discharged because it did not meet the statutory definition set forth in Bankruptcy Code Section 523(a)(8)(B). Section 523(a)(8)(B) excepts from discharge any private educational loan that is a "qualified education loan" as defined in Internal Revenue Code ("IRC") § 221(d)(1).

---

[1] The Bankruptcy Appellate Panel originally issued an unpublished decision. 1-ER-2. After a Request for Publication was filed by the Berkeley Law Center for Consumer Law & Economic Justice on March 27, 2026 [SER-24-28] that was joined by the National Consumer Bankruptcy Rights Center, the National Association of Consumer Bankruptcy Attorneys, the National Association of Student Loan Lawyers, the Central District Consumer Bankruptcy Attorneys Association, and the National Consumer Law Center, the Panel ordered the decision published. SER 3-21. The BAP also filed a Notice of Clerical Corrections on May 21, 2026. SER 22-23.

That statute defines a qualified education loan as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." The key to the BAP decision was the word "solely."

The bankruptcy court bifurcated the loan proceeds, holding those proceeds used for the remedial, pre-requisite undergraduate courses were not a qualified education loan and therefore discharged in the bankruptcy case, and the balance of the loan was a qualified education loan that was nondischargeable. 2-ER-223. The BAP, however, using the same factual findings, concluded it was error to split the loan because it "does not give effect to the statutory term 'solely." 1-ER-5 It correctly held the entire loan was discharged.

The Nichols write as though a favorable ruling on the meaning of "solely" would end this case in their favor. It would not. Even if this Court were to permit a mixed-purpose loan to be divided, the most the Nichols could obtain is reinstatement of the bifurcated judgment they themselves asked the BAP to set aside. And that judgment fails for a second, independent reason the BAP gave, which the Nichols barely address: the indebtedness fixed by their state court judgment is $331,500, while the qualified higher education expenses they proved at trial were $266,876.81. A loan that exceeds the demonstrated cost of attendance is a mixed-use loan, whatever purpose is ascribed to it. Every road available to the Nichols runs through findings of fact they did not contest and cannot now disturb.

The factual findings the Nichols must show were clearly erroneous begin at page 7 of the bankruptcy court's Memorandum Decision After Trial, where the court found:

> Neither the Plaintiffs nor the Defendant clarified whether this fast-tracked program was offered by St. George's University School of Medicine or by an undergraduate portion of the overall institution of St. George's University. Given the evidence provided on the record, the Court finds that these courses were a part of an undergraduate component of the overall institution of St. George's University.

2-ER-228. At page 32 the court found that the Nichols had failed to carry their burden on the same subject:

> [W]hile St. George's University School of Medicine was an eligible educational institution during the Relevant Years, the Plaintiffs did not establish that the undergraduate component of St. George's University, at which the Defendant completed his Pre-Medical Education, was an eligible educational institution.

2-ER-253. At page 43 the court found that Dr. Pearson "was not an eligible student during his Pre-Medical Education, because he was not attending an eligible educational institution." 2-ER-264. And at pages 45-46, applying the very purpose test the Nichols invoke, the court found:

> In this case, the loan was incurred to pay for the Defendant's Pre-Medical Education expenses in addition to his Medical Education expenses.

2-ER-266–67.

3

Dr. Pearson submits that the Nichols have not demonstrated on this record that any of these findings are clearly erroneous. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States* v. *Yellow Cab Co*., 338 U.S. 338, 342 (1949); see also *Inwood Laboratories, Inc*. v. *Ives Laboratories, Inc*., 456 U.S. 844 (1982)." *Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985).* Absent that showing, the judgment of the BAP should be affirmed.

## II.    STATEMENT OF JURISDICTION

Appellee James Lawrence Pearson ("Dr. Pearson") is satisfied with Appellants' jurisdictional statement and, under Federal Rule of Appellate Procedure 28(b)(1), does not restate it. Dr. Pearson agrees that the adversary proceeding was a core proceeding, that the Bankruptcy Appellate Panel had jurisdiction under 28 U.S.C. § 158(b), that the BAP's judgment entered February 27, 2026, is final, that this Court has jurisdiction under 28 U.S.C. § 158(d), and that the notice of appeal was timely.

4

### III.   STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

### A.   <u>Appellants Do Not Pair Their Issues With a Standard of Review, and the Standard They Assert Is Not the One That Governs</u>

Dr. Pearson does not accept Appellants' statement of the issues, and he therefore states the issues below, with the governing standard of review stated immediately after each. *See U.S.C.S. Ct. App. 9th Cir, Circuit R 28-2.5*

The framing matters. The Nichols list four issues in one block and place their "Applicable Standard of Appellate Review" in a separate, earlier section that never connects any standard to any issue. Appellant's Brief p.3-4.  That section asserts that the appeal "involves solely legal questions" subject to de novo review and concedes only in a closing sentence that factual determinations, "of which there is one critical dispute, are reviewed for clear error." *Id.* p.4.  Their argument then asks this Court, under two separate headings, to hold that the bankruptcy court "was in clear error on its factual finding" concerning where Dr. Pearson took the coursework funded by the first loan advances. *Id.* p.27, 31.  Calling an appeal one of "solely legal questions" does not convert a finding of fact into a conclusion of law. The findings the Nichols attack are findings of fact, made after a one-day trial at which six witnesses testified and were cross-examined, and they are reviewed only for clear error. *Fed. R. Civ. P. 52(a)(6), made applicable by Fed. R. Bankr. P. 7052.*

**B.** **Issue One and the Applicable Standard of Review**

**Issue One.** Whether the Bankruptcy Appellate Panel erred in concluding that the debt established by the judgment entered in the state court action *Nichols v. Pearson* was discharged.

**Standard of Review.** The BAP's decision was a legal conclusion, turning on statutory interpretation and reached upon findings of fact that the Nichols did not contest. It is therefore reviewed de novo. *Simpson v. Burkart (In re Simpson), 557 F. 3d 1010, 1014 (9th Cir. 2009).*

**C.** **Issue Two and the Applicable Standard of Review**

**Issue Two.** Whether the BAP erred in concluding that the entirety of the loan the Nichols made to Dr. Pearson was discharged because it was not incurred solely to pay qualified higher education expenses.

**Standard of Review.** The BAP's decision was a legal conclusion reached upon largely undisputed facts and is reviewed de novo. *Simpson, 557 F.3d at 1014.*

**D.** **Issue Three and the Applicable Standard of Review**

**Issue Three.** Whether the bankruptcy court committed clear error in finding that a portion of the loan the Nichols made to Dr. Pearson was not incurred to pay qualified higher education expenses.

6

**Standard of Review.** The bankruptcy court found that the Nichols had not shown that the expenses Dr. Pearson incurred while taking the prerequisite undergraduate courses were part of his medical school education, as such they were not qualified higher education expenses giving rise to nondischargeability in the bankruptcy. **2-ER-262, 264**. A court's underlying findings of fact are reviewed for clear error. Fed. R. Civ. P. 52(a)(6), made applicable by Fed. R. Bankr. P. 7052; *In re Thorpe Insulation Co.*, 677 F.3d at 879. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous, and where the finding rests on the trial judge's decision to credit one of two or more witnesses who have each told a coherent and facially plausible story not contradicted by extrinsic evidence, that finding "can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76 (1985).

E.     <u>**Issue Four and the Applicable Standard of Review**</u>

**Issue Four.** Whether, in the alternative, the judgment may be affirmed on the independent ground, which the BAP declined to reach, that the loan was not a "qualified education loan" because Dr. Pearson was not an "eligible student" attending an "eligible educational institution" for the program he actually pursued, 34 C.F.R. § 600.55(h)(2) having rendered the St.

George's/Northumbria program ineligible once he completed a basic-science year outside Grenada.

**Standard of Review.** "We review de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable." Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar), 567 B.R. 160, 164 (B.A.P. 9th Cir. 2017). Questions of statutory and regulatory interpretation are likewise reviewed de novo. *In re Thorpe Insulation Co., 677 F.3d at 879.* An appellee may urge in support of the judgment any ground appearing in the record, whether or not the court below relied on it. *Engleson v. Burlington N. R. Co., 972 F.2d 1038, 1039 (9th Cir. 1992).*

If this Court agrees with Dr. Pearson on Issues One through Three, it need not reach Issue Four.

## IV.  STATEMENT OF THE CASE

Because Appellants' statement of the case describes as "undisputed" the very matters the bankruptcy court found unproven, Dr. Pearson sets out the following statement. *Fed. R. App. P. 28(b)(3).*

**A.     The Loan and Dr. Pearson's Course of Study**

Dr. Pearson was married to the Nichols' daughter. 2-ER-68, 227, Upon deciding to attend medical school, the Nichols offered to provide the necessary loan funds. 2-ER-224, 228. The Nichols made advances between August 2012 and December 2016 totaling $331,500. 1-ER-5.

Dr. Pearson's education proceeded in two distinct stages. Before he could enroll in any medical school, he first had to complete several prerequisite undergraduate science courses and take the MCAT. 2-ER-228. He completed those courses outside of the medical school in a single academic year, fall 2012 through spring 2013, (the pre-medical education), took the MCAT, and only then enrolled at St. George's University School of Medicine, beginning in the fall of 2013. 2-ER-228–29. St. George's offered automatic admission to the school of medicine to prospective students who earned a minimum grade point average in those courses and a minimum MCAT score. 2-ER-228.

His medical education ran from the fall of 2013 to approximately June 2017. 2-ER-229. He spent the first academic year (fall 2013 and spring 2014) at Northumbria University in Newcastle, England through a study abroad program between St. George's and Northumbria; the second year in Grenada; and the final two years completing clinical training at Arrowhead Regional Medical Center in

Redlands, California. 2-ER-229. Throughout all stages, tuition and fees were paid to St. George's University. 2-ER-229.

The Nichols sued in Los Angeles County Superior Court in 2020, alleging breach of an oral contract and pleading damages of $324,130.03. 2-ER-235. On August 24, 2021, the court entered judgment for $331,500 plus costs. 2-ER-227, 234. Dr. Pearson filed his chapter 7 petition on October 31, 2022, and the Nichols commenced their adversary proceeding on February 6, 2023. 2-ER-223–24.

## B.       The Bankruptcy Court's Findings

Trial was held on February 25, 2025. Six witnesses testified and were cross-examined. 2-ER-222–23. The court issued a forty-seven-page Memorandum Decision After Trial. 2-ER-222–68. Five of its findings control this appeal.

First, on where the pre-medical education took place, the court found:

> Neither the Plaintiffs nor the Defendant clarified whether this fast-tracked program was offered by St. George's University School of Medicine or by an undergraduate portion of the overall institution of St. George's University. Given the evidence provided on the record, the Court finds that these courses were a part of an undergraduate component of the overall institution of St. George's University.

2-ER-228. The court grounded that finding in the compression of the courses into a single academic year and the automatic-admission arrangement. Id.

Second, the court found a failure of proof by the Nichols on the same subject:

> [W]hile St. George's University School of Medicine was an eligible educational institution during the Relevant Years, the Plaintiffs did not establish that the undergraduate component of St. George's University, at which the Defendant completed his Pre-Medical Education, was an eligible educational institution. . . . . Further, the Plaintiffs have not shown that the courses which the Defendant took during his Pre-Medical Education were taken while he was a student of St. George's School of Medicine. Rather, according to the Defendant's testimony, which the Plaintiffs have not contested, he was enrolled in undergraduate courses in a sort of pipeline program that, upon completion, would allow him to enroll at St. George's School of Medicine. . . . The Plaintiffs have not established that the courses he took were offered by the school of medicine or otherwise a part of any curriculum for the school of medicine itself.

Two features of the stipulation deserve mention. The Nichols observe that it defines "St. George" to mean "St. George University, School of Medicine," Pre-Trial Stipulation ¶ I.D [4-ER-623], and that the parties did not contest that Dr. Pearson "attended St. George from 2013 to 2017," ¶ I.K. 4-ER-630. Neither statement reaches the pre-medical education. Paragraph I.K describes a period beginning in 2013; the bankruptcy court found that the Pre-Medical Education ran from the fall of 2012 through the spring of 2013 and that the Medical Education began in the fall of 2013. 2-ER-228–29. Nor could Dr. Pearson have been enrolled in the school of medicine while completing the coursework and the examination that were preconditions to his admission to it. 2-ER-253.

The court added that the Federal School Code List for 2012–2013 listed two separate St. George's institutions, and that schools of medicine can be separately

11

listed from their associated undergraduate institutions — UCLA School of Medicine (E00374) is listed separately from UCLA (001315). *Id.*

Third, the court found that Dr. Pearson "was not an eligible student during his Pre-Medical Education, because he was not attending an eligible educational institution." 2-ER-264.

Fourth, on the amounts, the court found that the total stated on Nichols' Exhibit 3 was inaccurate and that the correct figure paid to St. George's University was $306,301.03, of which $39,292.00 was Pre-Medical Education expense and $132.22 was late fees that "do not fall within the definition of cost of attendance, and thus . . . are not qualified higher education expenses." 2-ER-260. It found that the remainder, $266,876.81, was the amount of qualified higher education expenses. 2-ER-260.

Fifth, and dispositively, the court found the purpose of the loan:

> In this case, the loan was incurred to pay for the Defendant's Pre-Medical Education expenses in addition to his Medical Education expenses.

2-ER-266–67. Having so found, the court nonetheless held $266,876.81 nondischargeable, reasoning that because IRC § 221(d)(1) speaks of "any indebtedness" rather than of loans in their entirety, it "properly may focus on the amount of indebtedness which clearly was intended solely to pay for qualified higher education expenses." *Id.* In a footnote it also weighed the ratio of pre-medical to

medical education expenditures, roughly 1 to 6.8, as suggesting that the "stated purpose" was to finance a medical education. 2-ER-266 n.88.. In a further footnote it expressly declined to follow *In re Homaidan*, believing that on *Homaidan's* logic a $500,000 loan of which $5,000 bought a car would be entirely dischargeable, and "[t]hat cannot be right." 2-ER-267 n.89. *See Homaidan v. Sallie Mae, Inc. (In re Homaidan), 646 B.R. 550, 589 (Bank. E.D.N.Y. 2022) (quoting Conti v. Arrowood Indem. Co. (In re Conti), 982 F.3d 445, 448 (6th Cir. 2020)).* The bankruptcy court judgment was entered April 16, 2025. 2-ER-214.

## C.    The Bankruptcy Appellate Panel's Decision

Dr. Pearson appealed and the Nichols cross appealed. On February 27, 2026, the BAP reversed and held the loan discharged in its entirety. 1-ER-2.

The BAP began by recording that "[t]he parties do not contest any factual findings by the bankruptcy court," and that "[e]ach party contends that the bankruptcy court erred in its interpretation and application of the law." 1-ER-10. It then held itself bound: "The parties do not contest the court's factual findings, and we are bound by them," citing Civil Rule 52(a)(6), made applicable by Rule 7052, and *Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)* ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). 1-ER-15. In a footnote it was more specific still: the Nichols "argue the entire loan should be nondischargeable because they believed the purpose of the loan was to fund

13

Pearson's medical education, but they do not contest the court's finding that 'the loan was incurred to pay for [Pearson's] Pre-Medical Education expenses in addition to his Medical Education expenses.'" 1-ER-15 n.8.

On the merits, the BAP held that § 523(a)(8)(B) excepts from discharge "an educational loan that is a qualified education loan," not some portion of one, and that the bankruptcy court's construction of "any indebtedness" gave no effect to "solely," because in every multipurpose loan the portion intended for qualified expenses will have been incurred to pay such expenses. 1-ER-16–17. It found its reading consistent with the Treasury Department's own mixed-use illustration at 26 C.F.R. § 1.221-1(e)(4), Example 6, noting that the bankruptcy court's $500,000 hypothetical "is identical in substance" to that example. 1-ER-17–19. The BAP was careful to say that it gave the regulation no deference and consulted it only for whatever power to persuade it carried. 1-ER-17 n.9.

The BAP also stated an independent alternative ground: the loan "was necessarily a mixed-use loan because it exceeded Pearson's qualified higher education expenses," such that "even if the bankruptcy court did not find that the loan was for multiple purposes, we would hold the entire loan dischargeable because it exceeds the demonstrated cost of attendance." 1-ER-18 (citing *In re Homaidan, 646 B.R. at 594,* and *In re Golden, 671 B.R. at 603–04*). That same reasoning was the BAP's stated basis for denying the Nichols' cross-appeal. 1-ER-18 n.10.

14

Finally, because it held the loan was not a qualified education loan, the BAP expressly declined to address Dr. Pearson's alternative argument that the study abroad program deprived the school of medicine of eligible institution status in his case. 1-ER-19 n.11. That ground remains open on this appeal.

The Nichols now assert that the BAP was mistaken in stating that they had not disputed the finding and direct this Court to two pages of their brief below. 1-ER-10; 2-ER-105–06.

## V. SUMMARY OF ARGUMENT

Section 523(a)(8)(B) excepts from discharge only a "qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code." Section 221(d)(1) defines that term as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." The indebtedness here was fixed by the Nichols' state court judgment at $331,500 plus costs. The bankruptcy court found that only $266,876.81 was attributable to qualified higher education expense (roughly eighty percent of the indebtedness) and it recognized that the amount it held nondischargeable was not the whole of the indebtedness, as the definition requires. 2-ER267. Yet without statutory analysis and without supporting authority it weighed ratios and felt that Congress could not have meant "all" if the qualified percentage was high enough. 2-ER-266 n.88, 267-n.89 "Solely" means the entire indebtedness must have been incurred to pay qualified higher education expenses, a

15

finding the bankruptcy court did not and could not make. Where the words of a statute are plain, "the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *Lamie v. United States Tr., 540 U.S. 526, 534 (2004).* There is nothing ambiguous about "solely." The BAP was right, and its judgment should be affirmed.

The Nichols cannot escape that conclusion by relabeling this appeal as one of purely issues of law. The bankruptcy court made three findings that decide it: that the loan "was incurred to pay for [Dr. Pearson's] Pre-Medical Education expenses in addition to his Medical Education expenses"; that the prerequisite courses "were a part of an undergraduate component of the overall institution of St. George's University"; and that the Nichols, who bore the burden, "have not established that the courses he took were offered by the school of medicine or otherwise a part of any curriculum for the school of medicine itself." 2-ER-228, 253, 267. The Nichols did not contest those findings before the BAP, which held itself bound by them and cited *Smith v. Marsh*. 1-ER-15 & n.8. They may not raise the challenge for the first time in this Court. And even if the challenge were permitted, it fails on the merits: the pretrial stipulation on which the Nichols rely establishes which institution Dr. Pearson attended and who he paid, not that remedial prerequisite courses were part of the medical school's degree program; the payee of a tuition remittance does not identify the program in which the payor was enrolled; and an assertion in an

16

appellate brief is not evidence. At most, the Nichols identify a second permissible view of the record, the rejection of which was not clear error. *Anderson, 470 U.S. at 573–76.*

Nor does the "purpose" test on which the Nichols stake their brief help them. The bankruptcy court applied that test, expressly, and citing the same authorities the Nichols cite, and it found that the loan's purpose embraced the Pre-Medical Education. 2-ER-264, 267. The Nichols therefore do not need a different legal test; they need a different factual finding, and they cannot have one. A loan whose purpose at inception includes expenses that are not qualified higher education expenses was not incurred "solely" for such expenses, and by the Treasury Department's own illustration such a loan "is not a qualified education loan." 26 C.F.R. § 1.221-1(e)(4), Example 6. The Nichols' late suggestion that the advances be recharacterized as "a series of loans" contradicts their own stipulation that there was one agreement and one loan and it contradicts their own adversary complaint to determine dischargeability filed in the bankruptcy proceeding and appears for the first time in a footnote in this Court. *Appellant's Brief p.41 n.17.*

Second, and independently, the judgment may be affirmed because Dr. Pearson was not an "eligible student" participating in an eligible program at an "eligible educational institution." The statutory chain runs from § 523(a)(8)(B) to I.R.C. §§ 221(d)(1) and (2), to I.R.C. §§ 25A(b)(3) and (f)(2), to the Higher

17

Education Act at 20 U.S.C. §§ 1088, 1091, and 1094, and finally to the federal regulations governing eligibility of a foreign medical school. Following that chain, in order for a student in a program within an eligible educational institution to be an eligible student under I.R.C. § 25A(b)(3), the school *and* the program that he attended must be eligible. Eligibility is not determined by checking a list, as the Nichols argue. Title IV eligibility is determined by satisfying each statutory and regulatory prong promulgated under the Higher Education Act.

The governing regulation, 34 C.F.R. § 600.55(h)(2) provides that no portion of a foreign graduate medical program offered to United States students, other than clinical training, may be located outside the country of the main campus. Dr. Pearson spent his first basic-science year at Northumbria in England. St. George's specifically told him what that meant, that he would be ineligible for Title IV federal student aid for *any part* of his medical education and training. The Department of Education's February 14, 2011 letter to the Chancellor of St. George's University, admitted at trial as Exhibit G, explicitly says the same. **ER-D p.27-28.** That is why the Nichols' loan was made in the first place. It is also why the loan is not a student loan excepted from discharge. The BAP did not reach this ground, but this Court may affirm on it.

18

## VI.    ARGUMENT

**A.    The Loan Was Not Incurred "Solely to Pay Qualified Higher Education Expenses," and the Nichols Have Not Shown Clear Error in the Findings That Compel That Conclusion**

**1.    The bankruptcy court found that the loan was incurred to pay pre-medical education expenses in addition to medical education expenses, and that the Nichols failed to carry their burden as to the pre-medical year.**

The Nichols were the plaintiffs in the bankruptcy adversary proceeding against Dr. Nichols. Under § 523(a)(8), "the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters." *In re Kashikar, 567 B.R. at 168 (quoting Roth v. Educ. Credit Mgmt. Corp. (In re Roth), 490 B.R. 908, 916–17 (9th Cir. BAP 2013)); see also In re Dufrane, 566 B.R. 28, 34 (Bankr. C.D. Cal. 2017); Grogan v. Garner, 498 U.S. 279 (1991) (preponderance standard)*. One element is that the indebtedness was incurred "solely to pay qualified higher education expenses," 26 U.S.C. § 221(d)(1), defined as the cost of attendance at an eligible educational institution, id. § 221(d)(2), attributable to education furnished while the recipient was an eligible student, *Id.* § 221(d)(1)(C).

19

On the Pre-Medical year, the bankruptcy court made the findings quoted above. 2-ER-238. It found affirmatively that the prerequisite courses "were a part of an undergraduate component of the overall institution of St. George's University," 2-ER-228; it found that the Nichols "did not establish that the undergraduate component of St. George's University . . . was an eligible educational institution," and "have not established that the courses he took were offered by the school of medicine or otherwise a part of any curriculum for the school of medicine itself," 2-ER-253; it found that Dr. Pearson "was not an eligible student during his Pre-Medical Education," 2-ER-264; and it found that "the loan was incurred to pay for the Defendant's Pre-Medical Education expenses in addition to his Medical Education expenses," 2-ER-267.

Those are not legal conclusions in the findings. They are factual determinations about what a trial record did and did not show, made by the judge who heard six witnesses, received the exhibits, reviewed Exhibit 3 line by line with Dr. Pearson on the stand, and corrected its arithmetic. 2-ER-223, 231 259, 260, And the last of them, the finding about what the loan was incurred to pay, is a finding about the loan's purpose at inception, which is the very inquiry the Nichols say controls.

If those findings stand, this appeal is over. The loan was incurred for two purposes, neither of which involved qualified higher education expenses because Dr.

20

Pearson did not complete his pre-med and medical education on St. George's main campus, as the HEA requires when the school is a foreign medical school. Further, a loan incurred for multiple purposes is not "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses."

Those findings do not stand alone. Two statements in the Nichols' own Pre-Trial Stipulation point the same way, and neither is a finding they can attack for clear error. That's a double defeat for the Nichols.

First, the parties stipulated, and the Nichols did not contest, that "[t]he Loan was intended *in part* to be used for Debtor's expenses at St. George University, School of Medicine . . . including tuition, books, fees, and other expenses related to medical school." *Pre-Trial Stipulation ¶ I.D*, 4-ER-623 (emphasis added).

Second, in setting out the elements of their own claim, the Nichols wrote: "There is no dispute that at least a portion of the Loan was incurred to pay qualified higher education expenses." *Pre-Trial Stipulation ¶ II.A.1.c*, 4-ER-640. The Nichols will answer that they asserted in the same paragraph that the entirety of the loan was for qualified expenses, and that the quoted sentence identified only the floor of what was undisputed. The answer is that the floor is all they ever proved. The bankruptcy court, after trial, found qualified higher education expenses of $266,876.81 of the total state court judgment, which was $331,500. 2-ER-260, 264.

21

Taken with the bankruptcy court's finding that "the loan was incurred to pay for the Defendant's Pre-Medical Education expenses in addition to his Medical Education expenses," 2-ER-267, these facts established from three independent directions the single proposition that decides this appeal: this indebtedness was not incurred *solely* to pay qualified higher education expenses.

**2. The Nichols did not contest those findings before the Bankruptcy Appellate Panel and cannot contest them now.**

There is a threshold obstacle that the Nichols' brief does not confront. The BAP noted twice that the factual findings were uncontested. It opened its discussion by stating that "[t]he parties do not contest any factual findings by the bankruptcy court" and that "[e]ach party contends that the bankruptcy court erred in its interpretation and application of the law." 1-ER-10. It then held: "The parties do not contest the court's factual findings, and we are bound by them," citing Civil Rule 52(a)(6) and *Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)*. 1-ER-15. And it identified the specific finding by name, noting that the Nichols "do not contest the court's finding that 'the loan was incurred to pay for [Pearson's] pre-medical education expenses in addition to his medical education expenses.'" 1-ER-15 n.8. The Nichols' only answer is footnote 6 of their opening brief, which asserts that the BAP "incorrectly indicated that Creditors did not dispute the facts" and cites two

22

pages of their own brief below. 2-ER-105–06. That answer does not work, for three reasons.

One, the Nichols do not identify a challenge to the findings that matter. Even on the Nichols' own account, what they disputed below concerned where the premedical courses were taken. They point to nothing in their briefing below contesting the finding that the loan "was incurred to pay for [Dr. Pearson's] Pre-Medical Education expenses in addition to his Medical Education expenses," which is the finding the BAP relied upon and the finding the BAP identified as uncontested.

Two, the Nichols asks this Court to review the BAP's characterization of the briefing rather than the bankruptcy court's judgment. If the Nichols believed the BAP had overlooked an argument they in fact made, the remedy was a motion for reconsideration or rehearing before the BAP. They did not obtain one.

Three, the Nichols cannot revive a waived challenge in any event. The rule the BAP applied is this Court's own: arguments not raised in a party's opening brief are deemed waived. *Smith v. Marsh, 194 F.3d at 1052*. The Nichols invoked that principle themselves below. Having litigated the appeal to the BAP on the premise that the facts were settled and only the law was in question, they cannot now recast the case as a clear-error challenge because the legal argument failed.

23

**3.** **On the merits, Appellants have not shown clear error.**

If this Court reaches the merits of the clear-error challenge, it fails. A finding stands unless, on the entire record, it is not a permissible view of the evidence; where two views are permissible, the trier of fact's choice between them cannot be clearly erroneous; and where the finding rests on crediting one witness's coherent and facially plausible account over another's, it "can virtually never be clear error." *Anderson, 470 U.S. at 573–76*. The Nichols offer three arguments, all of which fail.

> *a.* *The pretrial stipulation does not establish what Appellants say it establishes.*

The Nichols' central contention is that the pretrial stipulation "makes clear that Debtor only attended St. George's and did so for his entire school career," and that it therefore "must control" over what they describe as an unclear trial record. 4-ER-623, 630. But the stipulation they cite goes to which institution Dr. Pearson attended and to whom payments were made, and further undermining the Nichols' central contention is that the stipulation specifically spells out the two separate schools Dr. Pearson attended, Northumbria and St. George's. 4-ER 630 (¶ K, L, M, N, and O). It does not state that the prerequisite undergraduate courses were offered by the school of medicine, that they formed part of the school of medicine's curriculum, or that they led to a recognized educational credential. Those were the propositions the

24

bankruptcy court found unproven, and a stipulation silent on a proposition cannot establish it.

The distinction the bankruptcy court drew was not invented; it was drawn from the record and from the Federal School Code List that the Nichols themselves put in evidence. That list, for the very academic year of the Pre-Medical Education, contains two separate St. George's entries, "ST. GEORGE'S UNIVERSITY, SCHOOL OF M" (G22333) and "ST. GEORGE'S UNIVERSITY, SCHOOL OF" (G39743) — and it separately lists UCLA School of Medicine from UCLA. 2-ER-253. "St. George's University" is not a single undifferentiated entity, and a stipulation that Dr. Pearson attended "St. George's" does not tell a factfinder which component he attended in 2012–2013.

Nichols' own framing confirms the gap. They describe the courses as "prerequisite undergraduate courses" that Dr. Pearson "had to complete" before medical school. Prerequisite undergraduate coursework taken to qualify for admission to a degree program is not part of that degree program. You cannot even be admitted to a specific degree program without those required prerequisites. The bankruptcy court described the arrangement precisely: "a sort of pipeline program that, upon completion, would allow him to enroll at St. George's School of Medicine." 2-ER-253.

25

  *b.*  *That payments went to St. George's University does not establish enrollment in the school of medicine's program.*

Nichols next reason that because Exhibit 3 shows all payments made to St. George's, "all of the expenses necessarily were for qualified higher education expenses." The inference does not follow. A university may house both a degree-granting medical school and preparatory undergraduate coursework, and an account statement showing tuition remitted to the university says nothing about which program the student was enrolled in when a charge was incurred. The bankruptcy court itself explained that it inferred payments to St. George's University covered educational benefits "provided by any entity associated with St. George's University," listing the university, the school of medicine, Northumbria, and the clinical site separately. 2-ER-231 l. 1-10, n. 17 - 19. The payee was the institutional authority; it was not the program.

It is also worth noting what the Nichols do not challenge. They do not contend that the bankruptcy court clearly erred in finding that the total stated on their own Exhibit 3 was inaccurate, or in finding the correct amount paid to St. George's University to be $306,301.03, or in finding that $132.22 in late fees fell outside the cost of attendance and so were not qualified higher education expenses. 2-ER-238-239, 259–60. The bankruptcy court judgment fixes the indebtedness is $331,500 plus costs. Some $25,198.97 of that indebtedness was therefore never traced to any

payment to St. George's at all, and a further $132.22 was traced to charges the court held were not qualified expenses. Even setting the Pre-Medical Education entirely to one side, this indebtedness was not incurred solely to pay qualified higher education expenses.

      *c.*     *Assertions in an appellate brief are not evidence.*

The Nichols' remaining argument is that "the only evidence presented shows that Debtor attended an eligible educational institution, St. George's, when taking his first year of premedical classes." Appellant's Brief p.31. That sentence is offered despite the fact that evidence was admitted at trial to the contrary and the bankruptcy court found the opposite, that the Pre-Medical courses were part of an undergraduate component of the overall institution, and it found that Dr. Pearson's testimony describing the pipeline program was uncontested. 2-ER-228, 253; Clear-error review asks what the trial record contains, not what a party later writes about it.

      *d.*     *At most, Appellants identify a second permissible view of the record.*

Taken at their strongest, the Nichols' materials might show that a factfinder could have drawn a different inference from Exhibit 3 and the stipulation. 4-ER-677-679. That is not clear error; it is the ordinary condition of a contested record, and Rule 52(a)(6) allocates the choice to the trial judge. *Anderson, 470 U.S. at 573–74.* The BAP reached the same conclusion in the alternative, observing that even if the

findings had been contested, they were "amply supported by the record": the advances began in August 2012, a month after the couple married and moved to Grenada for the Pre-Medical Education, and Dr. Pearson was not admitted to the school of medicine until after he finished those courses and sat for the MCAT in May 2013. 1-ER-15–16. The chronology alone defeats the claim that the loan was incurred solely for medical school.

**4.** **Given those findings, "solely" is not satisfied, and the plain text controls.**

Section 221(d)(1) defines a qualified education loan as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." The indebtedness here is the $331,500 judgment plus costs. The qualified higher education expenses the bankruptcy court could find were $266,876.81. Approximately $64,623 of the indebtedness was something else. Eighty percent is a long way from "solely."

Rather than apply that text, the bankruptcy court weighed ratios, reasoning that because roughly one dollar went to prerequisite courses for every 6.8 that went to medical school, "the vast majority of the funds were actually used to pay for the qualified higher education expenses," which "suggests" that the stated purpose was to finance a medical education. 2-ER-266 fn.88. However, section 221(d)(1) contains no ratio and no "vast majority" threshold. It says "solely," not "to the extent

28

that." Where a statute's language is plain, "the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *Lamie, 540 U.S. at 534 (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); see United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241–42 (1989).* A construction that permits a court to sever the qualified portion of a multipurpose loan and hold that portion nondischargeable reads "solely" out of the statute, because in every multipurpose loan the qualified portion will have been incurred to pay qualified expenses. Courts must give effect "to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Hibbs v. Winn, 542 U.S. 88, 101 (2004).* And exceptions to discharge "are to be construed narrowly so that they are confined to their plainly-expressed terms." *Bendetti v. Gunness (In re Gunness), 505 B.R. 1, 7 (9th Cir. BAP 2014) (citing Bullock v. BankChampaign, N.A., 569 U.S. 267, 275 (2013), and Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998)); see also In re Christoff, 527 B.R. 624, 629 (9th Cir. BAP 2015).*

The Treasury Department has addressed mixed-purpose loans directly:

> Example 6. Mixed-use loans. Student J signs a promissory note for a loan secured by Student J's personal residence. Student J will use part of the loan proceeds to pay for certain improvements to Student J's residence and part of the loan proceeds to pay qualified higher education expenses of Student J's spouse. Because Student J obtains the loan not solely to pay qualified

29

> higher education expenses, the loan is not a qualified education loan.

26 C.F.R. § 1.221-1(e)(4). Appellant's Brief p. 62. The example does not apportion. It does not ask what fraction of the proceeds went to education. It concludes that the loan "is not a qualified education loan" because it was obtained "not solely" for qualified higher education expenses. The BAP found that reasoning persuasive while correctly declining to defer to it, 1-ER-17 n.9, and it observed that the bankruptcy court's own $500,000 hypothetical, offered to show that *Homaidan's* approach "cannot be right" and "is identical in substance to example 6." 1-ER-19.

The Nichols respond that Example 6 "does not state what the purpose of the loan was and instead focuses solely on how the student used the funds." That is not what the example says. It says Student J "obtains the loan not solely to pay qualified higher education expenses" — language about the obtaining of the loan, not about later spending. The example is about <u>purpose at inception</u>, and it holds that a loan with a partly non-qualified purpose is not a qualified education loan. Further, as the BAP noted in footnote 10, "Regardless of what the Nichols believe the purpose of the loan to be, it exceeds Pearson's cost of attendance. Thus, it necessarily was a mixed-use loan and excluded from the definition of qualified education loan." 1-ER-18.

**5.      The "purpose" test does not rescue the appeal, because the bankruptcy court applied it and found a mixed purpose.**

The Nichols devote most of their brief to establishing that courts look to a loan's purpose at inception rather than to the borrower's actual use of proceeds, marshaling *In re Conti, In re Quintanilla, In re Mazloom, In re Maas, In re Murphy, In re Busson-Sokolik, In re Mallett, and In re Jean-Baptiste*. Dr. Pearson does not need to defeat that line of authority, because it does not decide this case.

The bankruptcy court applied the purpose test. It said so expressly: "The Court looks to the stated purpose of the loan at the time of incurrence to determine whether it was 'incurred by the taxpayer solely to pay qualified higher education expenses,'" citing *Quintanilla, Mallett, and Conti*, three of the same decisions the Nichols cite. 2-ER-264. Having applied that test, it found, as the loan's purpose, that "the loan was incurred to pay for the Defendant's Pre-Medical Education expenses in addition to his Medical Education expenses." 2-ER-267. The Nichols therefore do not need a different legal standard. They need a different factual finding, and the standard of review does not permit them to obtain one.

That is also why this case bears no resemblance to the authorities the Nichols press. Those decisions address a recurring problem: a loan obtained for education whose proceeds the borrower then diverted elsewhere. *Quintanilla* is the paradigm: funding was delayed and the debtor spent the money on other things. The purpose

31

test exists to prevent a borrower from converting a nondischargeable education loan into a dischargeable one by misspending the money after the fact. Here there was no diversion and no misuse. Dr. Pearson spent the first advances exactly as everyone always intended: on the prerequisite undergraduate courses St. George's required before it would admit him to its medical school. The reason a portion of this loan falls outside § 221(d)(1) is not misconduct; it is that the parties agreed at the outset to finance a year of study that, under the text of the Bankruptcy Code, rendered the entire loan dischargeable in bankruptcy.

*Conti* confirms the point rather than undermining it. The Sixth Circuit held that a loan's purpose is "centrally discerned from the lender's agreement with the borrower," and that where the agreement does not resolve the question a court may look to surrounding circumstances, including who received the funds and whether the loan exceeded the cost of attendance. *In re Conti, 982 F.3d 445, 449 (6th Cir. 2020).* Here there was no written agreement at all; the obligation arose from an oral promise later reduced to judgment. The surrounding circumstances therefore do the work, and they include a first advance made in August 2012 for a year of undergraduate coursework, and an indebtedness of $331,500 that exceeded both the total traced to St. George's University and the qualified expenses the court could find. The Nichols complain that the BAP treated "exceeds cost of attendance" as dispositive rather than as one factor among several. Whether it is one factor or

32

several, every factor here points the same way, the loan was not *solely* incurred to pay qualified higher education expenses, making it fully dischargeable under the law. The "exceeds cost of attendance" fact is a clear admission that the portion in excess of the costs of attendance rendered the loan a dischargeable debt.

The Nichols' policy objection, that a use-based test would let debtors convert good loans into dischargeable ones by misspending, has no bearing on these facts. Dr. Pearson did not misspend anything.

**6.     The Bankruptcy Appellate Panel's independent cost-of-attendance holding is an alternative ground for affirmance that the Nichols barely address.**

Even if the Nichols could overcome every finding about the Pre-Medical Education, the Bankruptcy Appellate Panel gave a second and independent reason for its judgment: the loan "was necessarily a mixed-use loan because it exceeded Pearson's qualified higher education expenses," and "even if the bankruptcy court did not find that the loan was for multiple purposes, we would hold the entire loan dischargeable because it exceeds the demonstrated cost of attendance." 1-ER-18–19 (citing *In re Homaidan, 646 B.R. at 594, and In re Golden, 671 B.R. at 603–04)*. The BAP gave that same reason for denying the cross-appeal. 1-ER-18 n.10.

The premise of that holding is a set of findings the Nichols do not challenge. The bankruptcy court found the demonstrated qualified higher education expenses

33

to be $266,876.81 and noted that although the cost of attendance as determined by the institution "may have included amounts in addition to the tuition and fees shown in the account summary, the Nichols did not provide any other evidence of the cost of attendance." 1-ER-15 n.7. Cost of attendance is set by the institution and "is not determined by the individual student borrower's individualized choices." *Youssef v. Sallie Mae, Inc. (In re Homaidan), 650 B.R. 372, 416 (Bankr. E.D.N.Y. 2022).* The Nichols bore the burden of proving it but proved only $266,876.81. The indebtedness they seek to except from discharge is $331,500. On the BAP's alternative ground, that ends the matter, and the Nichols' brief offers no answer beyond the assertion that a cost-of-attendance excess should be one factor rather than a rule.

**7.      The "series of loans" theory contradicts Appellants' own adversary complaint, stipulations, and was never presented in the lower courts.**

In a footnote, the Nichols suggest for the first time that this Court might treat the indebtedness as "a series of loans, some of which are dischargeable and some of which are nondischargeable," because the funds were advanced over time in differing amounts. The suggestion cannot be adopted.   It contradicts the Nichols only adversary complaint where they pled one loan, not multiple loans. It contradicts the parties' pre-trial stipulation. And, as the BAP noted, "[a]lthough the Nichols

made several transfers over a four-year period, the parties stipulated that there was one agreement and one loan." 1-ER-14. The state court judgment rested on a single breach of a single oral contract and fixed the amount at $331,500, and the bankruptcy court found only $266,876.81 of the transfers to be an educational loan *Id.* The bankruptcy court described the arrangement as "a non-revolving line of credit," that is, one credit facility drawn in installments. 2-ER-261, 267.

This argument was also never presented in the lower courts, and arguments not raised in a party's opening brief are deemed waived. *Smith v. Marsh, 194 F.3d at 1052.* Recharacterizing a single loan resulting in a judgment as a series of discrete loans would require findings about the terms, purpose, and consideration of each advance, findings no one asked the bankruptcy court to make. An appellate court is not the place to construct them.

**B.** **In the Alternative, the Northumbria Year Meant Dr. Pearson Was Not an Eligible Student at an Eligible Educational Institution as Required by § 523(a)(8)(B)**

The BAP did not need to reach this issue. 1-ER-19 n.11. Dr. Pearson advanced it below and advances it here as an alternative basis for affirmance.

Section 523(a)(8)(B) was added to the Bankruptcy Code in 2005. Despite its twenty years in existence, very few cases have addressed exactly what is an eligible private loan under the subsection. Perhaps that is not surprising, as the subsection

starts one on a chase through the Internal Revenue Code to the Higher Education Act, and from there into Title 34 of the Code of Federal Regulations, where many of the ultimate definitions of what is an "eligible student" and what is an "eligible educational institution" and what is an "eligible program" are found. Deciding what constitutes a qualified education loan "requires delving into a nesting doll of statutory definitions." *Mazloom v. Navient Sols., LLC (In re Mazloom), 648 B.R. 1, 11 (Bankr. N.D.N.Y. 2023)*. Dr. Pearson walks through that maze below.

Beginning with the Bankruptcy Code provision, § 523(a)(8) states that "a discharge under section 727 . . . does not discharge an individual debtor from any debt" —

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for . . . (B) any other educational loan that is **a qualified education loan**, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

As the parties asserting that the loan was a qualified education loan excepted from discharge, the Nichols bore the burden at trial of establishing the factual and legal basis of their claim. *In re Kashikar, 567 B.R. at 168.*

Dr. Pearson does not dispute that he is an individual, nor does he claim a hardship discharge. The next pertinent provision is I.R.C. § 221(d)(1) and the subsections it references:

36

(d) Definitions. For purposes of this section (1) Qualified education loan. The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay **qualified higher education expenses** (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred, (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and (C) which are attributable to education furnished during a period during which the recipient was **an eligible student**. . . . (2) Qualified higher education expenses. The term "**qualified higher education expenses**" means the **cost of attendance** . . . at **an eligible educational institution** . . . . For purposes of the preceding sentence, the term "eligible educational institution" has the same meaning given such term by section 25A(f)(2) . . . . (3) Eligible student. The term "eligible student" has the meaning given such term by section 25A(b)(3).

Dr. Pearson asserts that the Nichols did not establish that they loaned money to an eligible student, attending an eligible educational institution, under an eligible program. The statutory trail therefore leads to I.R.C. §§ 25A(b) and (f), which provide in relevant part:

§ 25A(b)(3) Eligible student. — For purposes of this subsection, the term "eligible student" means, with respect to any academic period, a student who — (A) meets the requirements of section 484(a)(1) of the Higher Education Act of 1965 (20 U.S.C. 1091(a)(1)) . . . .

§ 25A(f)(2) Eligible educational institution. — The term "eligible educational institution" means an institution — (A) which is described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), . . . and (B) which is eligible to participate in a program under title IV of such Act.

37

The HEA at 20 U.S.C. § 1088 contains definitions describing an eligible program, concentrating largely on whether the program comprises sufficient hours of serious academic endeavor. Dr. Pearson's argument does not center on whether the medical school at St. George's main campus in Grenada offers a program described in § 1088. The HEA's provisions pertaining to student eligibility at 20 U.S.C. § 1091, however, are important:

> § 1091. Student eligibility. (a) In general. In order to receive any grant, loan, or work assistance under this subchapter, a student must — (1) be enrolled or accepted for enrollment in a degree, certificate, or other program (including a program of study abroad approved for credit by the eligible institution at which such student is enrolled) leading to a recognized educational credential at an institution of higher education that is an eligible institution in accordance with the provisions of section 1094 of this title . . . .

Finally, 20 U.S.C. § 1094 addresses program participation agreements. Dr. Pearson does not challenge that St. George's had a program participation agreement with the Department of Education that made students who completed their entire first two years on the main campus in Grenada eligible students at an eligible educational institution. That agreement qualified St. George's School of Medicine for inclusion on the Federal School Code List, as the bankruptcy court concluded. 2-ER-249. But concluding that any eligible program offered by a school on that list makes the school an eligible institution regardless of whether the student seeking funding was enrolled in an eligible program would render the entire program-

38

eligibility process meaningless. A school could apply for and obtain approval of a single program, then offer an underwater basket weaving degree program with full Title IV funding. The HEA requires conditions of participation to be met for an institution to be an eligible institution to receive Title IV payments for its eligible programs:

> § 1094(a) Required for programs of assistance; contents. In order to be an eligible institution for the purposes of a program authorized under this subchapter, an institution must be an institution of higher education or an eligible institution . . . and shall . . . enter into a program participation agreement with the Secretary.

Sparse case law on what is an eligible educational institution is found by looking at cases determining whether a school is eligible to receive Title IV funds. Although that authority often arises under the False Claims Act, where qui tam plaintiffs allege that a school received Title IV funds it should not have, those cases explain what is required to become an eligible institution. See, for example, *Urquilla-Diaz v. Kaplan University, 780 F.3d 1039, 1044 (11th Cir. 2015):*

> To be eligible to receive Title IV funds, a school must enter into a program participation agreement with the Department of Education. Id. § 1094; see also 34 C.F.R. § 668.14(a)(1) (2010). In signing such an agreement, the school promises to comply with all federal statutes applicable to Title IV of the Higher Education Act and the regulations promulgated thereunder. See § 1094; 34 C.F.R. § 668.14(b)(1). The school must also meet a number of additional requirements. But once qualified, students

who currently attend . . . may apply to receive Title IV funds by completing the Free Application for Federal Student Aid.

St. George's School of Medicine, for students attending only its Grenada main campus for the first two years, had a program participation agreement and was an eligible institution. The pathway set by § 523(a)(8)(B), leading to the definitions and requirements in I.R.C. § 221(d)(1) as explained in the above-quoted sections of the HEA, would have made Dr. Pearson an eligible student at an eligible educational institution had he attended his first two years on the main campus in Grenada. However, the HEA granted the Secretary of Education authority to further regulate eligible educational institutions through the Code of Federal Regulations. To understand why the regulations matter here, consider the Department of Education's letter to St. George's, Exhibit G [2-ER-195 and SER 29-30] (also see 34 C.F.R. §600.55(h)(2) (2012-2017)), which directs attention to those additional requirements:

> Section 600.55(h)(2) of the Federal Student Aid regulations for foreign institutions published in the Federal Register on November 1, 2010, and effective July 20, 2011, states that "No portion of the graduate medical educational program offered to U.S. students, other than the clinical training portion of the program, may be located outside of the country in which the main campus of the foreign medical school is located." 75 Fed. Reg. 67170, 67196 . . . . Thus, currently and after July 20, 2011, a medical education program offered by St. George's University for which the basic science portion of the program is located in its entirety in Grenada is a Title IV eligible program. However, on and after July 20, 2011, any program offered by St. George's

40

> University for which the basic science portion of the program is not located in its entirety in Grenada is not a Title IV eligible program.

The letter goes on to confirm that students who attend the non-clinical medical educational program "located entirely at St. George's University's main campus location in Grenada" remain eligible to apply for Title IV funding, while "[s]tudents who enroll after July 20, 2011, in a program for which any portion of the basic science part of the medical education program is at the United Kingdom location are not eligible to apply for Title IV, HEA program funding for *any part* of the program, even if that portion is offered at the Grenada location, or thereafter at otherwise eligible clinical sites." 2-ER-251–52 (emphasis added). Dr. Pearson enrolled in 2013 and spent the basic-science year at the United Kingdom location. The bankruptcy court read the letter to establish only that St. George's had at least one eligible program, 2-ER-251–52, without giving effect to the word "entirely" in the sentence that immediately precedes the one it relied upon.

The bankruptcy court itself found the link between the study abroad program and the loan. It inferred "that the Plaintiffs' loan was to substitute the institutional student loans that the Defendant testified he believed he could not obtain as a student in the study abroad program at St. George's." 2-ER-228 n.14. The loan made by the Nichols exists because the program Dr. Pearson entered placed him entirely outside Title IV eligibility for any student loan funding.

41

Title 34 of the Code of Federal Regulations is created under the authority granted to the Secretary of Education by 20 U.S.C. §§ 1221e-3 and 3474, which authorize the Secretary to "make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department," and to "prescribe such rules and regulations as the Secretary determines necessary or appropriate to administer and manage the functions of the Secretary or the Department." The Code of Federal Regulations, including Title 34, is published and maintained under the authority of 44 U.S.C. § 1510.

The Secretary's authority to qualify institutions outside the United States as Title IV institutions is set forth in 20 U.S.C. § 1002(a)(2). The parts of Title 34 addressing eligibility of foreign institutions to participate, that is, to become eligible educational institutions, are found at 34 C.F.R. §§ 600.51 through 600.58. Section 600.54 contains criteria for determining whether a foreign institution is eligible to apply to participate in the Direct Loan program. Section 600.55 sets forth additional criteria for a foreign graduate medical school. The subsection referenced in Exhibit G states:

> § 600.55(h) Location of a program. . . . (2) No portion of the graduate medical educational program offered to U.S. students, other than the clinical training portion of the program, may be located outside of the country in which the main campus of the foreign graduate medical school is located.

In simple terms, the Secretary of Education promulgated regulations regarding the eligibility of a foreign medical school to be an "eligible educational institution" which, beginning in July 2011, required that students spend their entire first two years of the program on the main campus in Grenada. Dr. Pearson did not do that. He decided to attend his first year at Northumbria. For purposes of his being an "eligible student" attending an "eligible educational institution" as the statutes require for the loan to qualify as a qualified education loan, that decision defeated his eligibility. He was ineligible for federal student aid, even though St. George's appeared on the Federal School Code List, because he did not spend the entirety of his first two years on the Grenada main campus. These facts cannot be ignored, as they offer a fourth basis for holding the Nichols' loan was just a loan, not a nondischargeable student loan.

Appellants, the Nichols, respond that institutional eligibility is the only relevant inquiry and that program eligibility is irrelevant, relying on *In re Decena, 549 B.R. 11 (Bankr. E.D.N.Y. 2016), and In re Rumer, 469 B.R. 553 (Bankr. M.D. Pa. 2012).* Neither decision involved a foreign graduate medical school; neither addressed 34 C.F.R. § 600.55(h)(2); and neither considered a Department of Education letter advising a school that a particular program was not Title IV eligible. More fundamentally, the Nichols' reading cannot be squared with § 1091(a)(1), which conditions student eligibility on enrollment "in a degree, certificate, or other

43

program . . . leading to a recognized educational credential at an institution of higher education that is an eligible institution." The statute Congress wrote requires an eligible institution, an eligible student, and a qualifying program. The Nichols' construction reads the program requirement out of the statute.

The stipulation forecloses the Nichols' reliance on the Federal School Code List in any event. The parties agreed, without contest, that "[t]he SGU/NU Program is not an institution" and that "[t]he SGU/NU Program is not on the Federal School Code List." Pre-Trial Stipulation ¶¶ I.P, I.Q, 4-ER-630. The list on which the Nichols rely therefore says nothing at all about the program in which Dr. Pearson actually enrolled.

The bankruptcy court's contrary conclusion rested in part on its observation that Dr. Pearson "in fact appears to agree that he was an eligible student," citing paragraph II.A.1.f of the Pre-Trial Stipulation. 2-ER-264. That paragraph is expressly designated "Contested." The sentence stating that "[t]here is no dispute that Debtor was an eligible student" appears within the *Nichols'* half of that contested paragraph. It is their contention, not a stipulation, and Dr. Pearson's response to the same paragraph addressed the portion of the loan attributable to education rather than conceding eligibility. Pre-Trial Stipulation ¶ II.A.1.f, 4-ER-642. A contested element of the Nichols' own claim is not an admission of that element.

Appellants did not and could not meet their burden to show that their loan was excepted from discharge under § 523(a)(8)(B).

## C. Congress's Unambiguous Language and the Policies Underlying § 523(a)(8)(B) Support Affirmance

Congress enacted specific protections for qualified education loans to ensure that they were used solely for educational purposes. Those protections serve a dual intent: to safeguard lenders and protect repayment by barring the discharge of qualified education loans, and to shield borrowers from the harsh consequences of non-dischargeability where a loan is not a qualified education loan, including loans made to ineligible students, at unqualified institutions, or for ineligible programs. To qualify for this highly protected status, Congress imposed stringent requirements, among them that the indebtedness be incurred solely to pay qualified higher education expenses at an eligible educational institution by an eligible student enrolled in an eligible program. Congress extended the protection of non-dischargeability to no other private loan type under § 523. The implications of this very narrow exception therefore cannot be ignored.

Borrowers, for their part, receive important federal safeguards. By attending Title IV eligible institutions that must adhere to the conditions imposed by program participation agreements, students can have greater confidence in their prospects of graduating and securing gainful employment. And when eligible students obtain

qualified education loans that must be used solely for qualified higher education expenses, they are assured of an array of Title IV benefits, including forbearance, income-driven repayment, federal oversight, and Public Service Loan Forgiveness. Dr. Pearson received none of those protections. The Nichols would have him bear the burden of non-dischargeability without any of its corresponding benefits.

Congress plainly intended student financial aid for higher education to be closely regulated when it enacted the Higher Education Act, borrowed definitions from the Internal Revenue Code, and authorized the Department of Education to promulgate Title 34. The Treasury Department anticipated and expressly addressed mixed-use loans and provided no exception for them. 26 C.F.R. § 1.221-1(e)(4), Example 6.

The Nichols' policy argument asks this Court to expand the category of nondischargeable private loans beyond the text Congress enacted, on the theory that lenders should not have to monitor how funds are spent. Nothing in Dr. Pearson's position asks lenders to monitor anything. It asks only that a private lender seeking the extraordinary protection of non-dischargeability satisfy the statutory definition. As the BAP put it, the result "may seem harsh, but the language of the statute is clear," and exceptions to discharge are confined to their plainly expressed terms. 1-ER-19. The Nichols' loan is simply a loan. It does not qualify for the special

protections of § 523(a)(8)(B), and Dr. Pearson was afforded none of the benefits that accompany a qualified education loan.

## VII.   CONCLUSION

The Nichols cannot prevail because they cannot overcome the findings of fact that the loan was incurred to pay pre-medical education expenses in addition to medical education expenses, and they never disputed those facts in the lower courts. Those findings were not clearly erroneous. Once they stand, the loan was not incurred solely to pay qualified higher education expenses, it is not a qualified education loan under 26 U.S.C. § 221(d)(1), and it is not excepted from discharge under 11 U.S.C. § 523(a)(8)(B). The judgment of the Bankruptcy Appellate Panel should be affirmed. In the alternative, this Court should affirm on the independent ground that Dr. Pearson was not an eligible student attending an eligible educational institution for the program he pursued.

Respectfully submitted,
**J. DOLING LAW, PC**

Dated: August 10, 2026          By:     /s/ *Jenny L. Doling*
JENNY L. DOLING, ESQ.
Counsel for Appellee
James Lawrence Pearson

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Ninth Circuit Rule 32-1(a) because it contains 11,154 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: August 10, 2026
/s/ *Jenny L. Doling*
Jenny L. Doling, Esq.
Counsel for Appellee

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel for Appellee states that Appeal Nos. 26-1962 and 26-1963 have been consolidated by order of this Court and arise from consolidated Bankruptcy Appellate Panel Appeal Nos. CC-25-1086 and CC-25-1087. Counsel is aware of no other case pending in this Court that is related within the meaning of Rule 28-2.6.

Dated: August 10, 2026

/s/ *Jenny L. Doling*
Jenny L. Doling, Esq.
Counsel for Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I electronically filed the foregoing Appellee's Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


Dated: August 10, 2026             /s/ *Jenny L. Doling*
                                   Jenny L. Doling, Esq.
                                   Counsel for Appellee